**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROSALBA DIAZ, | No. CV 07-1871-PHX-MHM |
| Plaintiff, | **ORDER** |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Rosalba Diaz seeks judicial review of the Administrative Law Judge's decision to deny her claim for disability insurance benefits pursuant § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Currently pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. #13) and Defendant Michael J. Astrue's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment (Dkt. #22). Plaintiff did not file a Response to Defendant's Cross-Motion for Summary Judgment.

**I.    PROCEDURAL HISTORY**

In May 2003, Plaintiff filed an application for a period of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Administrative Record ("AR") 61-63). Plaintiff's application was denied initially and on reconsideration. (AR 43-46, 48-50). Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ") in November 2003; the request was granted and a hearing was held before ALJ Laura Havens on March 29, 2005. (AR 401-421). On May 18, 2005, the ALJ denied Plaintiff's application for disability benefits, finding, among other things, that Plaintiff did not suffer a disability as defined in the Social Security Act from the alleged onset date through the date of the decision. (AR 364-372). The Appeals Council granted Plaintiff's request for review of the ALJ's decision because "[t]he hearing recording [could not] be located; there, the record is incomplete" (AR 378), and a second hearing was held before ALJ Michael Tucevich on April 5, 2007. (AR 383-399). On April 27, 2007, the ALJ found, among other things, that Plaintiff "had not been under a disability, as defined in the Social Security Act" from the alleged onset date of disability through the date of the decision. (AR 25). The Appeals Council denied Plaintiff's request for review of the ALJ's decision. On October 1, 2007, Plaintiff initiated the instant action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. BACKGROUND

### A. Plaintiff's Medical History

Plaintiff is a 44-year old female who sustained injury to her left knee after she tripped over a rock on July 17, 2001. (AR 163). On September 16, 2001, Plaintiff underwent magnetic resonance imaging ("MRI"), which showed meniscal tears and a chronically torn anterior cruciate ligament ("ACL") with thin joint effusion. (AR 133-134). As a result, Plaintiff underwent three surgeries on her knee: September 26, 2001; January 2, 2002, and March 20, 2002. (AR 184-86, 190-92, 193-95). Plaintiff's surgeon, Gerald Yacobucci, M.D., Diplomate, American Board of Orthopedic Surgery, released Plaintiff to desk work shortly after the first and second surgeries. (AR 328, 337). After the third surgery, Plaintiff was released to desk work after two months of recovery. (AR 312). Following her surgeries, although she continued to experience pain in her left knee, Plaintiff initially appeared to be recovering as expected; but progress notes indicate that around September 2002, Plaintiff was no longer progressing as expected due to increased pain. (AR 203-05, 213-14, 221-24). Plaintiff began attending orthopedic rehabilitation

1  on November 18, 2002, and Dr. Yacobucci noted on December 10, 2002, that Plaintiff's
2  knee was improving and she was experiencing less pain. (AR 281, 294). After making
3  "good improvement," Plaintiff was discharged from the rehabilitation program on April 1,
4  2003. (AR 263, 271-72).

### B. Hearing Testimony

On April 5, 2007, a hearing on Plaintiff's application for disability benefits was held before ALJ Michael Tucevich. (AR 383-400). Plaintiff gave testimony at that hearing. (Id.). David Janus, a vocational expert, also appeared at the hearing, but his testimony was not required. (AR 18). Plaintiff, age 42 at the time of the hearing, testified that she returned to work (after her first surgery, "but they had [her] sitting down." (AR 388). However, Plaintiff testified that she was sent home the next day because her manager told her that he did not have a desk job available for her. (AR 388-89). Plaintiff also testified that her post-op pain level was "[a]round six, eight, nine." (AR 656-57). However, after some apparent confusion over the appropriate nature of the pain levels in a 1-10 pain scale was cleared up (AR 391-95), Plaintiff testified that on an average day between July 2001 and April 2003 her pain level ranged from around a four to an eight. (AR 396). In addition, Plaintiff testified that she returned to work in April 2003, some time after her third surgery, and that her pain level was "about a six"; prior to that time she testified that her pain level had been at an eight. (AR 397-98). Further, although Plaintiff stated that she "worked with a lot of difficulty," she acknowledged that she was able to work "until just recently when [she] had another surgery to [her] left knee." (AR 399).

### C. ALJ's Conclusion

On April 27, 2007, the ALJ denied Plaintiff's claim for disability insurance benefits, following the requisite five-step sequential evaluation for determining whether an applicant is disabled under the Social Security Act. See 20 CFR §§ 404.1520 and 416.920. (AR 18-25). At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 17, 2001, the alleged onset date. (AR 20). At step

- 3 -

1  two, the ALJ stated that the objective medical evidence of the record indicated that
2  Plaintiff had "the following severe impairment: status post left knee injury." (Id.).
3  However, at step three, the ALJ concluded that this impairment did not meet or equal the
4  criteria of any listed impairment pursuant to 20 CFR, Part 404, Subpart P, Appendix 1.
5  (Id).

6  At step four, "[a]fter careful consideration of the record," the ALJ found "that
7  during the closed period of disability alleged, and thereafter, the claimant had the residual
8  functional capacity to perform sedentary work activity, with lifting and carrying up to ten
9  pounds, sitting for six hours a day and standing and walking to two hours a day, and with
10 occasional climbing, balancing, stooping, kneeling, crouching and crawling." (AR 21-
11 24).

12 In making this determination, the ALJ noted that although Plaintiff "testified to a
13 pain level of between 6 and 9 out of 10 . . . throughout the alleged closed period of
14 disability" at the March 29, 2005 hearing, she testified at the April 5, 2007 hearing that
15 she experienced "an average pain level of 4-5 while she is on her pain medications, with
16 the highest level of pain at 7 or 8, again, with pain medication." (AR 22). The ALJ also
17 noted that Plaintiff stated that her "pain improved following the third surgery," and that
18 Plaintiff "went back to work but could not get employment because there were no desk
19 jobs available." (Id.).

20 The ALJ rejecting Plaintiff's credibility, finding that "although [Plaintiff's]
21 medically determinable impairment could reasonably be expected to produce the alleged
22 symptoms, . . . [Plaintiff's] statements concerning the intensity, persistence and limiting
23 effect of th[o]se symptoms are not entirely credible." (AR 22). In particular, the ALJ
24 stated that while Plaintiff's "good work history demonstrates motivation and bolsters her
25 credibility, her testimony that "she could not stand or walk for more than ten minutes at a
26 time, lift objects heavier than 25 pounds, kneel or crouch[,] . . . . is less than fully credible
27 because treatment records show a steady improvement in her left knee condition
28 following each surgery, her treating orthopedic surgeon placed her at sedentary work, and

- 4 -

1  her self-reported daily activities, including cooking, doing the dishes, and helping the
2  children in the household get ready for school in the morning, are inconsistent with a
3  disabling impairment." (Id.).

4  In addition, the ALJ noted that "[a]fter initially injuring her left knee, [Plaintiff]
5  received conservative treatment of her left knee and continued to work under modified
6  work status for a short period of time." (Id.). Then, after her third surgery in March
7  2002, Plaintiff "was advised by her physician to stay off of her feet and use a cane for
8  walking." (Id.). Plaintiff was also released "to desk work shortly after the first and
9  second surgeries," and "[f]ollowing the third surgery, Dr. Yacobucci again released
10 [Plaintiff] to desk work." (Id.). Further, the ALJ noted that although "[p]hysical therapy
11 progress notes show that [Plaintiff] had some difficulties with the left knee through
12 November 2002, . . . a new course of physical therapy was begun, and by March 2003,
13 [Plaintiff] was discharged from therapy, having made 'good progress' toward goals."
14 (AR 23).

15 The ALJ gave controlling weight to the opinion of Dr. Yacobucci, Plaintiff's
16 treating physician, who "felt that [Plaintiff] had brief, temporary periods of disability
17 following her knee surgeries in September 2001 and January and March 2002, but that
18 she was able to return to desk work / sedentary work, after each of the surgeries." (Id.).
19 As such, the ALJ concluded that Plaintiff "did not have a period of disability over a 12-
20 month period from July 17, 2001 through April 1, 2003, despite the fact that she was
21 given permanent functional restrictions on April 1, 2003." (Id.).

22 At step five, the ALJ found that Plaintiff "is unable to perform any past relevant
23 work." (AR 24). The ALJ relied on the vocational expert's testimony at the prior hearing
24 that "based on a residual functional capacity for sedentary work activity, the claimant
25 would be unable to perform any of her past relevant work, which was comprised of
26 unskilled, manual labor jobs." (Id.). However, the ALJ found that "there are jobs that
27 exist in significant numbers in the national economy that [Plaintiff] can perform," because
28 Plaintiff "has been capable of making a successful adjustment to other work that exists in

significant numbers in the national economy." (AR 24-25). Specifically, the ALJ relied on the vocational expert's testimony that "an individual with [Plaintiff's] age, education, work experience, and residual functional capacity, . . . would be able to perform the requirements of representative occupations such as assembler of personal computer boards, of which 500 jobs exist in the regional economy and 80,000 jobs exist in the national economy." (AR 24). Thus, based on the ALJ's findings, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 17, 2001 through the date of this decision (20 CFR 404.1520(g))." (AR 25).

## III.  STANDARD OF REVIEW

To qualify for disability insurance benefits, an applicant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). The applicant must also show that she has a physical or mental impairment of such severity that the applicant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). To determine whether an applicant is eligible for disability insurance benefits, the ALJ must conduct the following five-step sequential analysis:

(1) determine whether the applicant is currently employed in substantial gainful activity;
(2) determine whether the applicant has a medically severe impairment or combination of impairments;
(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
(5) if not, determine whether the applicant is able to perform other work that exists in substantial numbers in the national economy.

20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

The Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and free from reversible legal error. See 42 U.S.C. 405(g); see also Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla," but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See, e.g., Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In order to determine whether substantial evidence supports a decision, the record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Richardson, 402 U.S. at 401; see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). Nonetheless, "[i]t is for the ALJ, not the courts, to resolve ambiguities and conflicts in the medical testimony and evidence." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and internal quotation marks omitted). The ALJ may draw inferences logically flowing from the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld." Id. (citation omitted). However, "[i]f there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the [ALJ's] reason for rejecting the claimant's testimony must be 'clear and convincing' and supported by specific findings." Dodrill v. Shalala, 12 F.3d 915, 917 (9th Cir. 1993) (quotations omitted). And "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant is disabled if he had credited the claimant's testimony, [the court must] remand for a calculation of benefits." Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (quotation omitted). Regardless, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [then the Court] may not substitute [its] judgment for that of the ALJ." Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. DISCUSSION

Plaintiff contends that the ALJ (1) "misinterpreted evidence to the detriment of the claimant," and (2) "improperly rejected the credibility of the claimant." (Dkt. #15, pp. 4-5).

### A. The ALJ Properly Considered the Evidence

Plaintiff argues that the evidence shows that Plaintiff "needed two subsequent surgeries and extensive physical therapy which would not have allowed her to return to any work on a sustained full-time basis," she "had not recovered sufficiently," she "had no desk work skills and it is not unreasonable that no employer would have kept her employed during the two subsequent surgeries and multiple weekly therapy session," and because she "is unable to communicate effectively in English, the ability to find a 'desk work job' in an English speaking society would be very difficult, if not impossible." (Dkt. #15, p.4).

However, Plaintiff acknowledges that she "never had a 12 consecutive month period of disability due to her being released to desk work." (Id.). That, in and of itself, is sufficient to deny Plaintiff's application for a period of disability benefits. For purposes of obtaining disability insurance benefits under the Act, a disability is defined as

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for *a continuous period of not less than 12 months*.

42 U.S.C. § 423(d)(1)(A) (emphasis added); see Barnhart v. Walton, 535 U.S. 212, 218 (2002) ("[T]he 'impairment' must last 12 months and also be severe enough to prevent the claimant from engaging in *virtually any* 'substantial gainful work.'") (emphasis added); Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) ("The statutory schema thus requires that a disability be *continuously disabling* from the time of onset during insured status to the time of application for benefits.") (emphasis added). Here, Plaintiff sustained an injury to her left knee on July 17, 2001. She continued to work for some period of time thereafter, and then underwent the first

- 8 -

1 surgical operation on her left knee on September 26, 2001.  Shortly thereafter, Plaintiff's
2 physician released her to desk work.  Plaintiff returned to work; although Plaintiff
3 testified that her employer made her leave the next day because there were no desk jobs
4 available, that does not mean that Plaintiff was unable to perform any substantial gainful
5 work.  As Defendant points out, "whether [Plaintiff's] prior employer would have kept
6 her employed, or whether a new employer would have hired her [and whether it would
7 have been difficult to find new employment], is immaterial to whether substantial
8 evidence supports the ALJ's decision that Plaintiff had the functional capacity to perform
9 other work existing in significant numbers in the national economy."  (Dkt. #22, p.3); see
10 also 20 C.F.R.§§ 404.1520(a)(v), (g); 404.1566(a)(1)-(3)(c) (2007) (listing factors for
11 determining whether other jobs exist in significant numbers that a claimant can perform).

12      Plaintiff was also released to desk work only soon after her second surgery on
13 January 2, 2002.  In addition, Plaintiff was released to desk work approximately two
14 months after her third surgery on March 20, 2002.  Thus, Plaintiff's treating physician
15 implicitly opined that Plaintiff was intermittently unable to work for approximately three
16 months, which is considerably less than the twelve months of continuous disability
17 required for an award of disability insurance benefits.  See 20 C.F.R. § 404.1509 (2007).
18 As such, the ALJ's conclusion that Plaintiff did not experience a period of disability of 12
19 months between July 17, 2001 and April 1, 2003, was not based on a misinterpretation of
20 the evidence.

21      In addition, relying on, among other things, the fact that Plaintiff's treating
22 physician released Plaintiff to desk work (i.e., sedentary work) after each surgery, the
23 ALJ found that Plaintiff's nonexertional limitations did not significantly affect her ability
24 to perform a wide range of unskilled sedentary work, and thus a finding of not disabled
25 was directed by the Medical-Vocational Guidelines Rule 201.23.  See 20 C.F.R. §
26 404.1501 *et seq.*; Part 404, Subpart P, Appendix 2, Rule 201.23 (2007).  Plaintiff does not
27 appear to contest this finding.

28

Further, even in the presence of nonexertional limitations such as modest exertional pain (as Plaintiff experienced here), the ALJ may resolve a case by finding that there are numerous entry-level, unskilled jobs existing in the national economy that claimant could potentially perform, despite his or her recognized limitations. See 20 C.F.R. § 404.1566(d)(1) (2007). Here, the ALJ properly relied on the vocational expert's prior testimony that an individual with Plaintiff's age, education, work experience, and residual functional capacity, would be able to perform the requirements of representative occupations that exist in the national economy. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (holding that an ALJ may rely upon the testimony of a vocational expert).

Accordingly, the Court holds that the ALJ did not misinterpret the evidence presented and properly found that Plaintiff's impairment did not meet the 12-month durational requirement, The Court also holds that, based on the testimony of the vocational expert, the medical record, and the Medical-Vocational Guidelines, the ALJ properly concluded that Plaintiff was not disabled as defined by the Social Security Act from July 17, 2001, the alleged disability onset date, throughout the period of disability. See Andrews, 53 F.3d at 1039 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld.") (citation omitted).

### B.     The ALJ Properly Discounted Plaintiff's Credibility

Plaintiff contends that the ALJ committed error by improperly rejecting her testimony regarding the severity of her symptoms, such as her pain level, and its impact on her functional abilities. (Dkt. #15, pp. 4-5). However, "[a]n ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (citation omitted). Nonetheless, "if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the [ALJ]'s reason for rejecting the claimant's testimony must be 'clear and convincing' and supported by specific findings." Dodrill, 12 F.3d at 918. General findings are insufficient; rather the

- 10 -

1  ALJ must identify what evidence is not credible and what evidence undermines the
2  claimant's complaints.  Id.; Light v. Social Sec. Admin., 119 F>3d 789, 792 (9th Cir.
3  1997) ("If a claimant produces evidence that he suffers from an ailment that could cause
4  pain, 'the ALJ can reject the claimant's testimony about the severity of [her] symptoms
5  only by offering specific, clear and convincing reasons for doing so.'") (quoting Smolen
6  v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  Here, Plaintiff contends that the ALJ did
7  not provide the requisite reasons supported by the evidence to reject Plaintiff's credibility
8  regarding the severity of her symptoms.

9       In reviewing the record on this point, the Court finds that the ALJ properly
10  considered relevant factors in reaching his credibility determination.  See Magallenes,
11  881 F.2d at 750 (noting that "the ALJ is responsible for determining credibility and
12  resolving conflicts in medical testimony").  For instance, the ALJ cited multiple relevant
13  factors recognized by the Ninth Circuit in discounting Plaintiff's testimony as to the
14  severity of her symptoms.  See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991)
15  (en banc) (noting that relevant factors an ALJ may consider include the nature, duration,
16  location, onset, and intensity of pain, functional restrictions and claimant's daily
17  activities); see Light, 119 F.3d at 792 ("In weighing a claimant's credibility, the ALJ may
18  consider his reputation for truthfulness, inconsistencies either in his testimony or between
19  his testimony and his conduct, his daily activities, his work record, and testimony from
20  physicians and third parties concerning the nature, severity, and effect of the symptoms of
21  which he complains."); see also SSR 96-7p.  The ALJ noted that Plaintiff testified at the
22  first hearing that her pain level was between a six and a nine throughout the alleged
23  period of disability, but then testified at the second hearing that her pain level was ranged
24  between a four and an eight throughout the period of disability.  (AR 22, 396, 416).

25       The ALJ also noted that Plaintiff's testimony that her pain level was between a six
26  and a nine was inconsistent with the fact that Plaintiff's treating physician released
27  Plaintiff to desk work, Plaintiff returned to work, and Plaintiff was only unable to
28  continue employment at her previous workplace because there were no desk jobs

- 11 -

available (not because she was in too much pain). (AR 22, 312, 328, 337). Plaintiff's alleged limitation – that she was in too much pain to do desk work (or other sedentary work) during the alleged disability period – is simply not supported by the medical record. See, e.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the claimant's pain and its disabling effects."). In addition, the ALJ noted that Plaintiff's daily activities, which included cooking, doing the dishes, and helping the children in the household get ready for school in the morning, are inconsistent with a disabling impairment. (AR 22, 113). While Plaintiff disagrees with the ALJ's determination, and is sympathetic to the fact that Plaintiff injured her knee and underwent three surgeries and physical therapy as a result, the Court's review is limited to merely determining whether the ALJ provided the requisite reasons to support his adverse credibility determination. And in reviewing the ALJ's specific findings and bases for his determination, the Court cannot conclude that the ALJ's credibility analysis was not supported by substantial evidence and free of legal error. See, e.g., Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) ("Our sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge.") (citations omitted).

## V.     SUMMARY

The Court finds that the ALJ did not misinterpret the evidence in the record or improperly discount Plaintiff's testimony regarding the severity of her symptoms. The ALJ properly found, and Plaintiff acknowledged, that she did not suffer a disability that lasted for a continuous period of not less than 12 months as required for an award of benefits. In addition, the ALJ made the necessary credibility determinations and provided specific and legitimate reasons that appear to be supported by substantial evidence in the record. Further, the ALJ properly relied on the findings of Plaintiff's treating physician, Dr. Yacobucci, and the testimony of the vocational expert, to find that although Plaintiff's

impairments were severe, Plaintiff's residual functional capacity did not prevent her from performing sedentary work. Thus, based on a review of all the facts and the record presented, the Court finds that there is substantial evidence to support the ALJ's decision.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is DENIED. (Dkt. #13).

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment is GRANTED. (Dkt. #22).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 26th day of March, 2009.

_____
Mary H. Murguia
United States District Judge